Dorothea E. Donaldson, J.
These are claims for damages to real property caused by the overflow of water from an adjoining stream onto claimants’ land, allegedly resulting from a defective culvert under a State highway. The defendant contended that the claim was not timely filed within the provisions of subdivisions 3 and 4 of section 10 of the Court of Claims Act. Claimants maintained that the applicable statute was section 5S of the Highway Law. The court, after consideration, ruled during trial that if the proof submitted showed that a tort had been negligently committed by an officer or employee of the State, then the claim was not timely filed within the provisions of subdivision 3. Provided, however, that if the claim fell *796 within the category of “ any other claim not otherwise provided for by this section ’ the filing of the claim within 121 days after the cause of action arose would be timely within the requirements of subdivision 4. (Killoran v. State of New York, 155 Misc. 26.)
Claimants were three neighbors who resided in the Town of Dobbs Ferry, two of whom (Frank Cagliostro, and Joseph and Marien Cagliostro) had properties abutting Landers Road, known variously as Dobbs Ferry Road or Route 100-D or State Highway No. 5231; the third (Roger Perrault) resided behind the home of Frank Cagliostro and was located on Shelley Avenue. Both Landers Road and Shelley Avenue ran parallel to each other, approximately 200 feet apart. Adjoining all three properties and running between the lands of Frank Cagliostro and of Roger Perrault was a small stream known as Rum Brook. This brook was a part of the Saw Mill River water basin and flowed generally north and south from Shelley Avenue to Landers Road. It flowed under both roads through culverts which were a box type commonly used by engineers at the time of their construction. The culvert under Shelley Avenue was upstream from the culvert downstream under Landers Road.
On June 26, 1962, between 2 and 5 o’clock in the afternoon, there was a rainfall which claimants alleged raised the customary level of water in Rum Brook from its three-foot depth to the top of its banks or greater, and so increased quantitatively the flow of water through the downstream culvert beyond its capacity, thus creating a blockage or ‘ ‘ backing up ’ ’ which caused the brook to overflow on their land and flood their homes.
Rum Brook was a small stream with a low flow of water in terms of discharge, whose banks rose approximately three feet from the stream bed. The brook followed a winding course and had grassy growth bordering it.
The two residences of Frank Cagliostro and Roger Perrault were built on land elevated above the grade of the edge of the banks. The homes were ranch type with playrooms in the basements ; both basements were approximately one to two feet above the stream-bank level. It is to these basements and playrooms and the contents therein that claimants alleged damage.
Claimants Joseph Cagliostro and Marien Cagliostro have submitted no proof relative to damage or cause of damage related to the claim herein. Accordingly, their claim is dismissed for failure to prosecute the claim.
Meteorological. proof submitted indicated that precipitation which occurred on June 26, 1962 varied from 0.03± inch measured at the Scarsdale weather station to 1.76± inches at *797 the White Plains Maple Moor station. The average rainfall in the area of claimant’s property was estimated as 0.95± inch, determined from the average computed from the five weather stations situated within the White Plains area. No weather station was located on Landers Boad or in the vicinity of claimants’ property, nor were records kept of rainfall in the Bum Brook watershed.
•Claimants contended that the culvert constructed under Landers Boad in 1921 was a defect that fell within the provisions of section 58 of the Highway Law. The defect was claimed to be either the size of the culvert, or a constriction within the culvert, or the design of the construction of the culvert which permitted uneven stones at the bottom where the stream flowed, or allowed the accumulation of silt on the uneven stones: They further contended that it was a question of fact whether or not the capacity of the culvert was adequate to carry off the free flow of water during the storm of June 26, 1962, and that from that determination of adequacy there should be inferred a proximate cause for the sequence of events which resulted in the alleged damages.
Expert testimony introduced varied with respect to the maximum amount of free-flowing water in cubic feet per second for normal or storm-filled “full” flow. No proof was submitted to show that the rainfall on June 26 was of such quantity that it would exceed the maximum capacity free-flow of Bum Brook in this area. The experts agreed that a greater flow of water than the maximum amount that the culverts could carry would constitute a “ back-up ” of water that may have created an overflow of the stream banks or caused flooding conditions. Foreign objects carried by the flowing water and lodged in the culvert might be the source of the “ backing up ” of water.
An employee of the Department of Public Works of the State of New York produced a 50-gallon wooden barrel, 27 inches in diameter and 36 inches in length. The foreman testified that he found this barrel, with other debris, wedged in the culvert under Landers Boad on the day following the storm of June 26 and that two similar barrels had to be destroyed in order to extricate the exhibited barrel. While this object was not observed during his inspection of the culverts in the afternoon of the downpour, it was, however, noticed and withdrawn on the following morning. There being no proof that it was not lodged in the Landers Boad culvert prior to or on the day of the heavy rainfall, the presence of this type of obstruction can be considered as one of the contributing factors to the sequence of events that occurred on June 26.
*798 Claimants have failed to sustain the burden of proof in showing that the culvert under Landers Road was inadequate to carry the increased flow of storm water or was in anywise the proximate cause of the overflow of water, that it was a defect within the provisions of section 58 of the Highway Law, and have failed to prove a prima facie case of negligence on the part of the defendant, the State of New York. In addition, no competent proof has been submitted to show that the amount of damages alleged actually were incurred by the claimants.
The claims must be, and hereby are, dismissed.
Since the claims do not fall within the provisions of section 58 of the Highway Law, subdivision 4 of section 10 of the Court of Claims Act is inapplicable. The claims were not timely filed.
Motions to dismiss made by the defendant at the close of claimants’ proof, upon which decision was reserved, are now denied. Motions to dismiss made by the defendant at the close of the entire case, are now granted.